IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| KAISER-FRANCIS OIL COMPANY, | |
|---|---|
| Plaintiff, | |
| vs. | Case No. 2:16-CV-00309 |
| NOBLE CASING INC.; and BAKER HUGHES OILFIELD OPERATIONS INC., | |
| Defendants. | |

**ORDER ON KAISER-FRANCIS' MOTION TO DISMISS DEFENDANT NOBLE CASING'S COUNTERCLAIM AND NOBLE CASING'S CROSS MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Plaintiff Kaiser-Francis' *Motion to Dismiss Defendant Noble Casing, Inc.'s Counterclaim* [ECF No. 28] and Defendant Noble Casing's *Cross-Motion for Summary Judgment* [ECF No. 30]. Having considered the pleadings, motions, relevant filings, and oral argument, the Court FINDS and ORDERS as follows:

**BACKGROUND**

Plaintiff, Kaiser-Francis Oil Company ("Kaiser-Francis") filed this action on December 20, 2016, asserting breach of contract and negligence claims against Defendant Noble Casing ("Noble") in addition to claims for breach of contract, negligence, and breach of implied warranties for sale of goods against Defendant Baker Hughes Oilfield Operations ("Baker Hughes"). [ECF No. 1]. These claims arise from oil

and gas work performed on the Shelby 2-034H Well ("the Shelby Well") in Laramie County, Wyoming in late 2015.

Kaiser-Francis operates the Shelby Well and was preparing it for a fifty-stage hydraulic fracturing operation in September 2015. [ECF No. 1 at 2]. Defendant Baker Hughes sold and supplied Plaintiff with a pup joint and liner top pack assembly used to connect the lateral casing liners in the well during the fracturing operation. [ECF No. 21 at ¶ 8]. A pup joint is a pipe used to adjust the length of pipe strings while the liner top pack is designed to provide a reliable seal. This pup joint liner top was assembled by Baker Hughes in Casper, Wyoming and delivered to the Shelby Well by Baker Hughes. [ECF No. 21 at ¶ 9]. Representatives of Baker Hughes were present at the Shelby Well site on September 7, 2015. *Id.* at ¶ 11. Defendant Noble provided the casing crew and power casing tongs necessary to run the casing and pup joint liner top assembly at the Shelby Well. [ECF No. 13 at 2].

On October 20, 2015, during the third stage of the fracturing operation, a leak was detected in the casing of the Shelby Well which required all fracturing operations to cease. [ECF No. 1 at ¶ 13]. After extensive fishing operations, Plaintiff recovered the pup joint liner top assembly and all pipe above the point of failure. [ECF No. 1 at ¶ 14].

Plaintiff alleges a failure analysis of the recovered pup joint liner top assembly shows a longitudinal split that occurred within the deep tong marks on the pipe. [ECF No. 1 at 3]. Plaintiff alleges the excessively deep tong marks could have only been made by (1) Baker Hughes while assembling the pup joint liner top assembly; or (2) Noble when it ran the pup joint liner top assembly into the Shelby Well using its power tongs. [ECF No.

2

1 at 5]. Kaiser-Francis claims it incurred $1.65 million in costs when it was forced to shut down its operations, stabilize the Shelby Well, fish out over 8,000 feet of casing, and prepare the Shelby Well for another frack job. *Id.*



Figure 1
View of the split after cleaning.



Figure 2
Close-up view of the split showing deep tong marks, indicated by yellow arrows, and shallow tong marks, indicated by white arrows.

[ECF No. 1 at 4].

There is no dispute Kaiser-Francis and Noble entered into a Master Service Agreement ("MSA"), effective August 28, 2015, that governs all work Noble performed for Kaiser-Francis at the Shelby Well. [ECF No. 25 at ¶ 19]. Relying upon ¶ 9[1] of the MSA Noble's Amended Answer asserts a Counterclaim against the Plaintiff alleging Kaiser-Francis assumed all liability for Noble and agrees to defend, indemnify, and save Noble harmless against any and all loss liability, damage, and claims incurred to Kaiser-Francis' property. [ECF No. 25 at 9]. Plaintiff, Kaiser-Francis seeks to dismiss Noble's

---

[1] The pertinent portions of Paragraph 9 provide:
9. INDEMNIFICATION: The following indemnification and releases of liability will apply to all work performed under this agreement except as noted in Paragraph 13, Insurance Requirements. In the event one party must bring legal action in order to enforce indemnification, all costs and expenses related to that legal action, including attorney fees, shall be included as part of the indemnification. As used herein, "Company Group" shall mean Company [Kaiser-Francis], its parent, its affiliates and subsidiaries, its partners, its joint owners and ventures, and its and their directors, agents, representatives, employees and insurers and its contractors (other than Contractor), subcontractors, invitees and consultants and their employees. "Company Group" also means any entity, other than Contractor Group which company has contractually agreed to indemnify and/or assume the liability of, which arises out of, in connection with, or results from the performance of this Agreement. As used herein, "Contractor Group" shall mean Contractor [Noble Casing, Inc.], its parent, its affiliates and subsidiaries, its partners, its joint owners and ventures, and its and their directors, agents, representatives, employees and insurers and its subcontractors, invitees and consultants and their employees. "Contractor Group" also means any entity, other than Company Group, which Contractor has contractually agreed to indemnify and/or assume the liability of which arises out of, in connection with, or results from the performance of this Agreement.
a.      CONTRACTORS INDEMNIFICATION OF COMPANY: Contractor shall assume all liability for and shall release Company Group of any liability for, and shall defend, indemnify, and save Company Group harmless from and against any and all loss, liability, damage, claims, demands, and causes of action of every kind and character (including punitive damages and legal costs and expenses), incurred in respect of injury to Contractor's property, and for death, personal injury to or sickness of any employee of Contractor (including leased employees) or of employees of Contractor's subcontractor's or Contractors invitees, however rising and without regard to the cause or causes thereof or the negligence of any party or parties or breach of duty on the part of Company. Contractor's indemnity shall be without regard to and without any right to contribution from any insurance maintained by Company pursuant to Paragraph 13.
b.      COMPANY'S INDEMNIFICATION OF CONTRACTOR: Company shall assume all liability for and shall release Contractor Group of any liability for, and shall defend, indemnify, and save Contractor Group harmless from and against any and all loss, liability, damage, claims, demands, and causes of action of every kind and character (including punitive damages and legal costs and expenses), incurred in respect of injury to Company's property, and for death, personal injury to or sickness of any employee of Company (including leased employees) or of employees of Company's subcontractor's or Company's invitees, however arising and without regard to the cause of causes or the negligence of any party or parties or breach of duty on the part of Contractor. Company's indemnity shall be without regard to and without any right to contribution from any insurance maintained by Contractor pursuant to paragraph 13.
c.      If a claim is asserted against one of the parties to this Agreement which may give rise to a claim for indemnity against the other party hereto, the party against whom the claim is first asserted must notify the potential indemnitor in writing and give the potential indemnitor the right to defend or assist in the defense of the claim.

Counterclaim for failure to state a claim. [ECF No. 28]. Noble has filed a cross-motion for summary judgment seeking summary judgment on its counterclaim for indemnification and against Kaiser-Francis' claims of negligence and breach of contract. [ECF No. 30].

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a plaintiff's complaint fails to state a claim upon which relief can be granted. In reviewing a motion to dismiss under Rule 12(b)(6), this Court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In order to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Tomboy*, 550 U.S. 544, 570 (2007). In determining the plausibility of a claim, this Court looks to the elements of the particular cause of action, mindful that Rule 12(b)(6) does not require plaintiff to set forth a prima facie case for each element. *See George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016).

The "plausibility standard" is not a probability requirement, but requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The Twombly standard may have greater bite in the context of a § 1983 claim against individual government actors, because they typically include

5

complex claims against multiple defendants." *Id.* "It is particularly important in such circumstances that the complaint make clear who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d, 1242, 1250 (10th Cir. 2008).

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). However, where summary judgment is done on the basis of the pleadings alone it is functionally equivalent to a motion for judgment on the pleadings. A district court has discretion to convert a motion for summary judgment to a motion for judgment on the pleadings where it can be granted without considering extraneous materials. *Dobson v. Anderson*, 319 F. App'x. 698, 702 (10th Cir. 2008); *see also In re Mullaney*, 179 B.R. 942, 945 (D. Colo. 1995) (citing *Davis v. Michigan Dept. of Corrections*, 746 F. Supp. 662 (E.D. Mich. 1990)). This Court will exercise its discretion and limit itself to the pleadings in this matter and will construe Defendant's *Cross-Motion for Summary Judgment* as a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c).

## DISCUSSION

Jurisdiction over this matter arises from diversity of citizenship, 28 U.S.C. § 1332. Plaintiff is an oil and gas exploration and production company organized under the laws of Delaware, with its principal place of business in Oklahoma. [ECF No. 1 at ¶ 1]. Noble is an oil field casing company organized under the laws of North Dakota, with its principal place of business in Colorado. [ECF No. 13 at ¶ 2]. Plaintiff seeks recovery of

$1.65 million in expenses related to Defendants' alleged actions. Federal courts, sitting in diversity, must apply state substantive law. *See Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015). Therefore, Wyoming law applies in this matter.

Noble's Counterclaim alleges Kaiser-Francis assumed all liability for and released Noble against any and all losses to Kaiser-Francis' property under the MSA. [ECF No. 25 at 9]. Noble alleges that Kaiser-Francis owes it a duty to defend and indemnify Noble against the cause of action and damages alleged in Kaiser-Francis' complaint. *Id*. Based upon the MSA Noble asserts Kaiser-Francis assumed liability and released Noble for the damage to Kaiser-Francis' property and therefore is in breach of the MSA by bringing this suit. *Id*. at 9. Noble further asserts Kaiser-Francis owes it a duty to defend the claims brought against it under Kaiser-Francis' Complaint. *Id*. Noble seeks damages arising from the alleged breach of contract including costs, attorney fees, and all related expenses. *Id.* at 10.

Kaiser-Francis has moved to dismiss Noble's Counterclaim because: (1) Wyoming law prohibits indemnity for damages resulting from a party's own negligence; and (2) the indemnity clause in the MSA applies only to third-party claims. (ECF No. 29 at 5–6). Kaiser-Francis asserts a statutory defense to Noble's indemnity Counterclaim. Wyoming's oilfield anti-indemnity statute declares void as a matter of public policy, "[a]ll agreements…pertaining to any well for oil, gas or water…to the extent [they] purport[] to relieve the indemnitee from loss or liability for his own negligence." WYO. STAT. ANN § 30-1-131(a)(iii)(B). In response Noble contends under ¶9 of the MSA, separate and apart from any duty of indemnification, Kaiser-Francis **assumed** all liability

7

for damage to its property and **released** Noble for damages in respect to Kaiser-Francis' property and agreed to **defend** Noble from any and all loss or claims. [ECF No. 31 at 7-8] (emphasis added). Thus, the argument goes, while indemnity may not be allowed, "1) Assumption of liability; 2) Release; 3) and, duty to Defend, which are all separately identified and therefore should be given their separate and unique meaning as intended by the parties and apart from the equally definite provisions for indemnity." [ECF No. 31 at 10.] Even to the extent applicable to a first party claim, this Court believes that "indemnity" encompasses the terms "assumption of liability" and "release". In addition to construe the MSA as requiring Kaiser-Francis to provide a defense to Noble, would render portions of the MSA meaningless.

Wyoming's anti-indemnity statute applies to "[a]ll agreements, covenants or promises contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water, or mine for any mineral, which purport to indemnify the indemnitee against loss or liability." WYO. STAT. ANN. § 30-1-131(a). As noted in *Lexington Insurance Company v. Precision Drilling Company,* 830 F.3d 1219, 1220 (10th Cir. 2016):

> There can be no doubt that Wyoming law usually prohibits those engaged in the oil and gas industry from contractually shifting to others liability for their own negligence. Just as Lexington points out, the state's Anti-Indemnity Statute declares void as a matter of public policy "[a]ll agreements . . . pertaining to any well for oil, gas or water . . . to the extent [they] . . . purport[] to relieve the indemnitee from loss or liability for his own negligence." WYO. STAT. ANN. § 30-1-131(a)(iii)(B).

*Id*. To accept Noble's parsing of "release" or "assumption of liability" from the MSA's paragraph titled "INDEMNIFICATION" would in fact relieve the indemnitee [Noble] from loss or liability for its own negligence and "shift" that liability to Kaiser-Francis.

8

Moreover, where the term "release" is used conjunctively with indemnification it has generally been recognized as part and parcel of the indemnity obligation. *See Tesoro Petroleum Corp. v. Nabors Drilling*, 106 S.W.3d 118, 131 (Tex.App. 2002) (indemnification and release provisions of drilling contract taken together constituted a "mutual indemnity obligation" under Texas statute). In this case Kaiser-Francis has brought direct claims against Noble for damages caused by Noble's alleged breach of contract and/or negligence, not passive, imputed or vicarious liability. [ECF No. 1 at ¶¶s 23 and 27]. Based upon the MSA Noble seeks to have Kaiser-Francis [indemnitor] assume liability for Noble's [indemnitee's] own negligence and/or breach. Under the MSA, whether it be "release" or "assumption of liability" it constitutes "indemnity" and, if the activity covered by the MSA is closely related to oil well drilling the indemnity provision is void. *See Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1075 (Wyo. 2002); *see also R&G Elec., Inc. v. Devon Energy Corp.*, 53 Fed.Appx. 857, 861 (10th Cir. Dec. 17, 2002). Based upon the allegations in the Complaint and admitted in Noble's Amended Answer and Counterclaim, the activity giving rise to the claims under the MSA was closely related to oil well drilling.

There is no dispute the MSA pertains to and governed Defendant Noble's work for Kaiser-Francis at the Shelby Well. [ECF No. 1 at ¶ 19; ECF No. 25 at ¶ 19]. Noble provided the crew and power casing tongs used to run the well casing and place the pup joint liner top assembly[2] into the Shelby Well prior to the fracking operation. [ECF No. 1

---

[2] The pup joint liner top assembly was provided by the other Defendant in this case, Baker Hughes.

9

at ¶¶ 10, 12; ECF No. 25 at ¶¶ 10, 12]. The type of contracts covered by the statute include, "any agreement or understanding, written or oral, concerning any operations related to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in connection with any well drilled for the purpose of producing or disposing of oil, gas or other minerals…." WYO. STAT. ANN. § 30-1-132. Courts consider whether the activity occurring or performed under the contract is closely related to oil well drilling. *Gainsco Ins. Co. v. Amoco Production Co.*, 53 P.3d 1051, 1075-77 (Wyo. 2002). Here, the work performed by Defendant Noble under the MSA clearly falls under activities directly related to oil and gas wells, as covered by the anti-indemnification statute.

Turning to the Duty to Defend. Noble asserts that while the anti-indemnity statute may void those provisions of a contract requiring indemnity for the indemnitee's own negligence, the duty to defend is separate and distinct from indemnity and is not voided. [ECF No. 31 at 12-14]. Kaiser-Francis asserts that the duty to defend is a prohibited contract of indemnity and even if not itself an indemnity contract it is still prohibited under the anti-indemnity statute. [ECF No. 40 at 10-11]. In the alternative Kaiser-Francis asserts that the duty to defend is not applicable to the first party claims against Noble. *Id*. at 13-18].

In asserting that a duty to defend is separate and distinct from "indemnification" Noble relies upon *Powder River Coal, LLC v. Interstate Power Systems, Inc., et al*., 2009-CV-0179-WFD, a 2011 unpublished decision from this Court. In *Powder River* the Court, based upon the circumstances of that case, noted "[a] contractual duty to defend is

10

entirely different from an agreement requiring indemnification for an indemnitee's own negligence." *Id*. at 20. In making that observation the Court cited to *Northwinds of Wyoming v. Phillips Petroleum Co.,* 779 P.2d 753, 759 (Wyo. 1989). In *Northwinds,* which did not involve an agreement subject to Wyoming's anti-indemnity statute, the Wyoming Supreme Court noted that "Phillips was not seeking indemnification for its own negligence but rather is simply seeking to enforce an alleged contractual duty to defend." *Id*. at 759. Because of this distinction, the Court did not apply the rule of strict construction in reviewing the duty to defend clause, but rather applied the rule of broad construction. *Id*.

Neither the Court in *Northwinds* nor *Powder River* analyzed whether a duty to defend survived application of the Wyoming anti-indemnity statute. It was not applicable to the contract and work being performed in *Northwinds* and it wasn't necessary to resolve the issue in *Powder River*. However, the Wyoming Supreme Court's most recent statement in *Pennant Service Co., Inc. v. True Oil Co., LLC*, 249 P.3d 698, 709 (Wyo. 2011), indicates that in those cases where the anti-indemnity statutes applies "Wyoming law does not allow True Oil to be indemnified for its attorney's fees for its own negligence . . .." *Id*. at 709. In analyzing the arguments in *Pennant,* the Court further noted, in response to True Oil's assertion that *Northwinds* supported its entitlement to fees and costs in the underlying action, "Pennant points out that *Northwinds* does not apply § 30-1-131, and True Oil's reliance on *Northwinds* is misplaced." *Id*.

In the case at bar §30-1-131 does apply and Noble is seeking a defense or reimbursement for the expense of a defense to Kaiser-Francis' claims that are based

11

solely upon Noble's own alleged negligent conduct. [ECF No. 1 at 5-7]. The Court believes Wyo. Stat. § 30-1-131 precludes such a claim. However, this is but one obstacle to a "defense" of Kaiser-Francis' claims.

When read as a whole the MSA itself does not support the existence of a duty to defend direct first party claims—those made by one party directly against the other party to the MSA/contract. Under ¶ 24 of the MSA:

> In any action brought by **a party hereto** to enforce the obligations of any **other party hereto**, the **prevailing party** shall be **entitled to collect from the opposing party** to such action such party's reasonable litigation costs and **attorneys fees and expenses** (including court costs, reasonable fees of accountants and experts, and other expenses incidental to the litigation).

[ECF No. 1 at 17] (emphasis added). A finding that Noble is entitled to a defense or reimbursement of its attorney's fees and costs in this first party action would render ¶ 24 of the MSA meaningless. That can't be done under Wyoming law:

> Our rules of interpretation require that we interpret a contract as a whole, reading each provision in light of all the others to find their plain meaning. *Arnold v. Ommen,* 2009 WY 24, ¶ 40, 201 P.3d 1127, 1138 (Wyo.2009); *see also Caballo Coal Co. v. Fid. Exploration & Prod. Co.,* 2004 WY 6, ¶ 11, 84 P.3d 311, 314–15 (Wyo.2004). We presume each provision in a contract has a purpose, and we avoid interpreting a contract so as to find inconsistent provisions or so as to render any provision meaningless. *Scherer v. Laramie Reg'l Airport Bd.,* 2010 WY 105, ¶ 11, 236 P.3d 996, 1003 (Wyo.2010).

*Claman v. Popp*, 2012 WY 92, ¶ 28, 279 P.3d 1003, 1013 (Wyo. 2012). In order to give meaning to the unambiguous provisions of ¶ 24 of the MSA, any claim for a defense or an award of attorney's fees and costs, in an action directly between the parties to the MSA (Kaiser-Francis and Noble), is limited to the prevailing party in such an action. Accordingly, Noble's claim under the MSA that Kaiser-Francis has a duty to defend

Noble against Kaiser-Francis' claims against Noble fails as a matter of law, aside from the logical conundrum.

## CONCLUSION

As set forth above, whether couched in terms of "assumption of liability" or "release" it constitutes indemnity under Wyoming law. Based upon the allegations in the Complaint and as admitted in Noble's Amended Answer, the activity giving rise to the claims under the MSA were closely related to oil well drilling. Therefore, under Wyo. Stat. § 30-1-131 to the extent the MSA would provide indemnity to Noble for its own, direct conduct, it is void and unenforceable. Similarly, under Wyoming law Noble is not entitled to a defense by Kaiser-Francis or reimbursement of its attorneys' fees and costs in defending this direct action. Finally, to construe the MSA as requiring Kaiser-Francis to provide a defense to Noble, in this situation would render portions of the MSA meaningless.

THEREFORE, IT IS HEREBY ORDERED Plaintiff's *Motion to Dismiss Defendant Noble Casing, Inc.'s Counterclaim* [ECF No. 28] is hereby GRANTED. It is FURTHER ORDERED Defendant Noble's *Cross-Motion for Summary Judgment* [ECF No. 30] is hereby DENIED.

Dated this 10th day of May, 2017.

Scott W. Skavdahl
United States District Judge